Case number 23-1707 Kathleen Squiers v. Washtenaw County, Michigan Argument not to exceed 15 minutes per side Ms. Cortese, you may proceed Good morning your honors Good morning Matt Cortese appearing on behalf of the appellant plaintiff Kathleen Squiers This is a case arising under the Americans with Disabilities Act and one of the core issues is whether the ability to lift over 30 pounds and the ability to lift 15 pounds for longer than 2 hours a day was an essential function of Kathleen Squiers' job It bears pointing out that Kathleen Squiers' job position was as Parks Horticulturalist She was not a manual laborer She was not primarily doing that type of work Her work included a lot of managerial and administrative One of the funny things about this case in my mind is that your client in 2018-2019 presented a more onerous version of the job description and the employer presented a less onerous description of the job description after the events unfolded We know from your client's perspective that she said that this job requires lifting 80 pounds and we also know from her doctor that she can't lift more than 30 pounds How do we reconcile that part of the case? We don't necessarily know that That's not entirely clear from the record It's certainly alluded to in the record However, what the record actually is is that Kathleen Squiers was asked in her deposition about an email that she had sent That email had a proposed update to the job description It was, as the record shows, in the course of sort of a going back and forth a what should this job description look like The testimony in the record, she was asked did you send this email She said yes, I did I'm just looking at the Washtenaw County job description reworked that I think she completed and it just says physical demands, heavy physical demands Duties also require sufficient physical agility to lift 80 pounds Didn't she prepare this? Again, the record is that she would say that she did not prepare this She forwarded it with the email I believe she said in the record that although she forwarded it I don't think she ever said in the record that yes, she prepared it And I don't think it was ever fully developed in the record The extent to which she believed that the 80 pounds not just should be included in the job description is maybe this is an ideal Maybe this is what our ideal candidate would have Maybe this is what we would like to see But there's no evidence What do we do when we add to that the fact that after her diagnosis she said, quote, I no longer complete the hard physical labor aspects of the job And again, as we say in our briefing, this is clear in the record And she testified in her deposition And giving her sort of the benefit of the doubt is the non-moving party And construing the facts in the light most favorable to Kathleen Squires is the non-moving party Do we do that with the plaintiff's own statements? From the standpoint It's such a funny thing to say We're construing it in her favor We're therefore going to diminish what she said Oh, thank you Well, but I think we have to take what she said in context And what she said And maybe we can all identify with this as anyone who's had a medical scare Anyone who first goes into the doctor's office And the doctor says, for example Well, you know, we found some melanoma And your mind immediately goes to the worst case scenario And it immediately says, oh my gosh Am I going to have to have chemo? Am I going to have to have radiation? How much time am I going to have to take off? She testifies in her deposition to provide context to that, Your Honor That that was the initial scare That was when she first finds out that she's got this aortic aneurysm And it sounds scary And she's thinking, oh my gosh I'm supposed to be doing some physical things in my job I'm supposed to be planting flowers I'm supposed to be weeding and mulching Mulching is Those are heavy bags, aren't they? Well, but are they over 30 pounds? Mine are all 40 I'm putting legislative facts in the record Those are heavy bags And she testified And Mary, her work with her, also said That if they were going to lift something heavy They would help each other doing it When they had a really heavy thing to lift Like a tree, they would use a front loader These are not two women who even before the diagnosis Even before the request for accommodation These are not two women who are out there in the field Lifting and toting giant, you know, hundred pounds There's this document that includes the 80 pounds That your client at least forwarded And must have looked at I don't understand the difference between Attached and forwarded versus reviewed Or I didn't quite understand all the semantics But at one point she seemed to endorse the idea of 80 pounds And again, the case law says One thing that is looked at, one factor that is looked at Is the job description But it is not, as you weigh all of the factors out It's not in and of itself dispositive That could have been Kathy saying You know, in an ideal candidate, once in a while Maybe you have to lift, in an ideal world, 80 pounds But there's... Is everything listed on a job description an essential duty? And I would submit that it's not There's things on a job description That are perhaps, you know, in an ideal world This is what we'd like an ideal candidate to do But there is a difference between Every little thing that may be listed in a job description Versus the parts of a job that are so essential That basically, with an essential job description When something is an essential job description That should be treated as something exceptional in a way Because it takes it out If we had a rule that said You had to do everything in a job description Without an accommodation Without getting help to do it Or something like that You know, you can't meet the essential functions of your job What would happen if we had a rule like that? What that would happen is That would potentially allow employers To do what they did in this case And what they argued to do in this case And what the district court adopted Which was to basically say When something is deemed to be an essential job description That means the inquiry of a job description And the inquiry of accommodation They basically become conflated And so that if something is an essential job description As the district court found It meant the employer in a lot of ways Got to skip the interactive process step They got to sort of, you know Do not pass go Do not collect $200 HR did not have to sit down with Kathleen Squires They did not have to sit down with When you look at the job description And the district court had to figure out Which is really essential And which, you know, if you can do with an accommodation Or if you can't do, aren't essential And we used just like the factor test to do that Is that how we're supposed to go through it? Yes, and we set forth in our brief I think sort of the seven factors that are looked at One factor is job description But other factors are, you know The implication of the job didn't get done How, you know, again How essential is the job to the position? And the record is really replete With a lot of discussion of the many things That Kathleen did for her job Are those legal questions then for the court to resolve? These are factual questions And what the case law makes clear And even the Hostetler decision Which came out after the Ford v. EEOC What the case law makes clear Is these are fact-intensive inquiries And the case law does say That, you know, again As with a Rule 56 motion for summary judgment The case law makes clear If these are really resolutions of facts That need to be made These have become questions for the jury If it becomes a matter of weighing This is what the employer is saying This is what... On the fact question, if there is a dispute The employer says at least 40 pounds In their job description that comes out Around the time of this sequence of events Do you agree with the 40-pound characterization? We would not agree that that was Necessarily an essential job function We think that, as we point out in our brief If the employer deemed lifting over 40 pounds 40 pounds or above to be an essential job function One would have expected They would have put that in the job description At some point That it would have been formalized It would have been finalized Your point, because they say The incumbent must be physically capable Of completing the tasks Including lifting up to 40 pounds But is your point that there's no weight There's no lifting requirement for the job? That's not a... And our point would be Maybe that is something That could have been explored Through the interactive process That's something the employer skipped What would you say Well, let's call it a fact question What are you going to say to the jury? At this point, I mean, lifting I find it quite astonishing to say Lifting is irrelevant to this job That seems astonishing to me And we're not saying irrelevant So, and you're allowed to say here There's different testimony By different opponents Including the plaintiff And that's for a jury So I get that whole point I just want to know what your theory Is going to be to the jury Yes, what our theory would be to the jury And consistently with As Kathleen Squires testified And as Mary Carpenter testified Our theory would be that When they would come across Something very heavy Something over, say, 30 pounds That had to be lifted They would either lift it together Sometimes they had volunteers Or in the case of something like a tree They would roll it They would get it to the front loader They would get it on the front loader And then they would lift it With the assistance of equipment So lift, under that theory Heavy lifting is not an essential Because you're saying at every point It's a meaningful weight There's a way around the problem That's what I hear you saying What we would say is Heavy lifting was not essential What's heavy? Anything above, I mean Her doctor's limitation is 30 pounds We would say anything above 30 pounds So the doctor's in charge Of the Washtenaw County No, but the doctor We submit that the doctor Submitted a reasonable request For accommodation with her And some of the work But I mean, just so we're all on the same page The question of reasonableness From the doctor Turns in what actually is going on On the ground And I get the point that It doesn't help them That they came up with this 40 pound limit Days after her request I get the point But again, I want to know What you could concede is a real limit There has to be lifting in this job You can't mulch You can't strew pebbles every which way That's just You can't even with a team do things Without lifting some essential things And I guess to address that From sort of the practical standpoint What we would concede is That she could do the work Within her limitations What's the best opponent you have Who is connected to the job Not to your doctor? I think the best opponents we have Is Mary Carpenter Who worked with her She said what? She said when asked to describe Their job duties First she talked about How they would be outside And they would do things Like weeding, mulching No, lifting What did she say in the lifting? What the weight of them? Oh, what she said With regards to lifting What she said is that If anything was heavy Because they're both women You know, neither of them Are 20, 22 year old women They're both women What she said is that If something was heavy As a practical matter They would work together They would lift it together So there is no lifting requirement That's your view? No, our view is She could do lifting within That she could do lifting Within her reasonable accommodation That a 30 pound limit Was reasonable Anything under 30 pounds She could do She could do 15 pounds Up to two hours a day That she could do most of the lifting She could lift flower beds She could lift One more question related to this You know, usually in these Accommodation cases You move someone to a different job Or you reduce their duties But this accommodation Is absolutely tied to having Another employee or employees At the employer Helping the employee So it's got this Like extra factor to it Like the accommodation Can't just be done within that job The accommodation always requires Someone else to be there And suppose the county Terminates the assistant Well, and that is What is that? They don't want that But they riff that position And that is a good point What I would say is That's actually Sure What I would say is That's actually the reality Of how she and Mary worked If you look at Mary's Deposition testimony That's exactly how they worked They worked together If something was heavy They would handle it together They also had equipment They had front loaders There's a law that Is Mary Miss Robinson? Yeah, Mary Robinson I was saying Mary Carpenter I apologize It's Mary Robinson Who was 71 at the time Yes So basically What she was really asking for With this accommodation Was sort of just to codify The way they were already working Okay, I just Remember the 88 Is from a legal perspective The accommodation The law can require A second employee To be sort of tied To the initial employee And this is now affecting Two jobs This accommodation And again, we're just You can't really terminate The second person then Because if you do The first person Can no longer do their job Which, again From that practical standpoint It's sort of exactly How they've always Been doing the job I understand The practical reality I'm just talking about The legal question Yes Like the rule of law You want us to write It really feels like These two things are tied together And I don't know if cases Say that In the accommodation context And I think the rule of law May be that Where you've got this Kind of a very Fact-intensive inquiry And you've got Sort of a factual split That perhaps It does go to the jury For the jury to decide Is that an essential I'm just trying to think About the reasonable Accommodation framework And I think this is An important question That Judge Riedler Is asking Like is that An essential functions question Or does that become An undue burden question So like right Right now While they have These employees This is something that They could accommodate Without it being You know An extreme burden Or an unreasonable burden On the organization But if they didn't Have that That other individual If they needed to fire That individual Or things like that Does something change And become an undue burden Or is this just like Always an essential function That she has To be able to do By herself I'm just trying to figure out Where in the analysis These questions go And I think again What was significant In the record Is the record never shows That she did this by herself You know They always worked together I understand that And it seemed like She had considerable Flexibility over Like when she did things She could save tasks For when volunteers Were there And things like that Absolutely But there may be situations Which I think Judge Riedler's question Brings to light Like there may be situations Where Where That wouldn't be the reality And if that were To become the case Is now the employer Locked in Or would there just be A different analysis Later on If something Would become unduly burdensome And I think that also Raises an interesting point And that kind of ties back To one of the cases That's been cited In the briefs In the briefing Was the en banc decision Of EEOCV Ford Motor And in that situation         When the en banc court Found that in-person attendance Was an essential requirement The court found it significant That that had been After Ford had tried Three times With this particular employee To allow her To work from home To see if that could be A reasonable accommodation One of the problems We have in this case That's sort of giving rise To a lot of this Is because the employer Skipped any attempt To accommodate Any attempt to engage In the interactive process We don't know what could Or could not have worked And because the lower court's opinion Conflated a lifting limitation With any physical I guess my question is Can the analysis change If the workplace dynamics change I think Judge Riedler's question is Are they now required to keep Ms. Robinson forever Or Ms. Robinson might want to retire Right? She seems like she may have earned that So I think there's a concern About being locked in At a particular way Can the analysis evolve I understand the iterative process And this person And trying to figure out Different things But I think my question was What if the job circumstances The employer's situation changes And I think that is A very good question And a very good point And again The situation is fluid It may be a situation You're saying that Then it could change Yes And at that point in time If there comes a point in time When she is out there in the field Maybe Mary Robinson retires Maybe it's only her There would be a Presumably a vacancy For Mary Robinson's position That would be filled Maybe they don't want to fill it At that point The employer could say All right You know Now things have changed Now Ms. Squires You're not able to do your job And we're going to take a look at it At that point Why don't we hear What the county has to say And you'll get your model Of course I think we'll probably return To this line of questions Thank you, your honor Let's see what the county has to say And come back to it Good morning Good morning, your honor May it please the court Ryan Schwartz On behalf of Defendant Apelli Washtenaw County To kind of take that Last question The questions were helpful I was trying to pay attention But there were a lot So I definitely did not Remember them all The law might require Reassignment In a job reassignment context Marginal functions But it doesn't require Essential functions So I mean That is a critical issue In this case Is lifting And heavy lifting Lifting over 30 pounds An essential function And the county believes It is an essential function Can I By oneself By oneself Yes I mean it's The job description Is for a person She is the As the She is the sole Park Full-time park horticulturalist Mary Robinson is a Part-time seasonal employee Or volunteers Might be there But she is the sole person Responsible for this And by her Own admission I mean I don't think This is a situation Where it's You know 50-50 A mix of Whether this is an Essential function or not I think on one side You have a mountain of stuff Including her own admission Through the I would not go too hard On all that Because I don't think Your client Did a great job with this I don't care what she said You didn't have it In your description And then you add it In the context of This litigation I mean A jury might Roll their eyes at that So your Your honor I don't think It's quite accurate to say It was added in the context Of the litigation I will agree that Out in the context Of her request That is correct It's worse It was It was after the request Was made But the job description The written job description Itself is It was 25 minutes After you denied her Why are you saying That's mitigating That A description A description that Her doctor had reviewed And certified she could do You changed it 25 minutes after Two points One is the job description Is just one factor So if you look at What the actual So even if There's no requirement That there ever be A job description You started us down this road With the mountain of evidence I tried to warn you To be careful on that And you're either Going to defend the mountain Or don't defend the mountain But there is not A lot of mountain There's no mountain of evidence About a weight restriction In this job That's all one sided That's just not true I think in the record There is testimony From the people that At what weight What At what weight What's this kind of Uniform policy weight Was it 40 pounds Miraculously I agree I agree that there's not A single written request And I One of the reasons How about the deponents Were the deponents All saying the same thing They said she was Regularly lifting heavy items And one of the items In her If you look at the ADA I believe the county Did engage in this Interactive process She submits the Says I got a Medical condition They submit They give her information They submit a form back When that form comes back In addition to also Saying The doctor saying She's only limited In the ability to lift Heavy objects And later on He says Greater than 30 pounds Or 15 pounds For more than two hours He also notes Bringing up the mulch He says She'd be lifting Bags of mulch Or other heavy items Would be restricted So the doctor is It doesn't I don't think it makes a difference Exactly what that limit is The doctor is restricting her From lifting what Is determined to be Kind of an essential function Of that position While we're in the record I was having a little bit of Problem following Some of the things Can you tell me Where in the record Does the county Say that It can't accommodate Her not being able to lift Less than 30 pounds I was able to find Right the      There was like Earlier on She said I don't know I have to go through testing Like right now I can't do the heavy stuff You know And then she comes back She's got to have These cardiology things Whatever Finally we get The last ADA request From the doctor And I'm trying to Figure out Where in the record The county actually Says they can't Accommodate That last Request What What That she can't Lift More than 30 pounds For two hours Yeah It is one of the emails I don't know Which one it is It is That was Cited and Attached to a Summary judgment brief Yeah you know I have the attachments To a summary judgment brief So the last email That I see Is on June 1st From the HR Representative Michelle Murray So that It starts They deny You know Good afternoon Kathy This is on May 28th And she Says hey You know We have reviewed Everything And we are Unable to Accommodate This She says Can you Explain The explanation Is that We are Unable to Accommodate Your request As it is Related to Lifting items Under 10 pounds Occasionally And low exertion Light duty Assignments It still Seems like They are Doing this Preliminary Not The ADA form That says She can lift 30 pounds For 2 hours I think the email You quoted Is where They are Responding to The request And saying They can't Accommodate The lifting The lifting Request From the doctor They are saying They can't Accommodate Lifting For the 10 pounds Occasionally And low exertion Light duty Assignments I have the email Where does it say She can't do This job For being able To lift 30 pounds For 2 hours A day I think That is the email That the county Has There is no Other email I am aware of Would it be a reasonable Inference for a jury To make That this is Responding to Her first Preliminary Request And not The actual Request Because this is What that reference Is No I Disagree If you look At what the Doctors The full Scope Of the Doctors Request He has A bunch Of different Things He refers To lifting Heavy objects At times Without a weight Limit And with The mulch And if you Get to the  Even if Counting    Lifting    At Different  They Need To Have They They Must Need To And They Must Have A weight Limit And What      Operative Request Is The Document 22-14 The Action One On The Medical Forum That You Asked To Do And This Does Not Include That Limitation So I Think It Was Also In The Testimony Of The People That Are On Those  As Well Testified About What They Did But Let's Assume It's Not An Essential Function Something That Maybe Is You  More Marginal Type Things What's What's The Accommodation Then What's The Iterative Process That Happened Here To Find An Accommodation The  Accommodation That The County Could Provide Is An Accommodation Under The ADA There Is A Permanent Unpaid Leave As Part Of That Process Ms. Squire Said Working   With Her Doctor To Monitor The Condition She Never Came Back With Additional Medical Records To Say It's Getting Better Or No It's Really Going To Be Permanent But There Are 99 Months It's Right Here 99 Months  I Mean We're Mixing Up A Lot Of  I Just  To Make Sure I'm  The Essentials Of  Job Description Says 40 Pounds The Accommodation She Wants Is No More Than Two Hours 30  Who Testifies In This Job You Have To Regularly Lift 30 Pounds She Said Heavy But She Described It With Objects That I Think Any Reasonable Jury Would Say Are Heavy More Than 30 Pounds If You're Lifting A Root Of A Tree You Can  It If You Can Lift A Root Of A Tree You Can Do It If You Can Lift A Root Of A Tree You Can Do It If You Can Lift A Root Of A Tree You Can     Can Lift A Root     Can Do It  You Can Lift A Root Of A Tree You Can Do It If You Can Lift A Root Of A Tree You Can Do It If  You  Lift A Root Of A Tree You Can Lift A Root Of A Tree You Can Do It If You Can Lift A Root    Of A Root Of                    Root    You Can Lift  Root                Can  A    Root Of Root Ball Overhead Roof Root Of Root Of      Root Of Root Of Root Of Root Of Root Of Root Of Root Of Root Of Root  Root Of Root  Root  Root Of Root here and I don't I don't think the court's going in a direction where it would say any time unpaid leave is an adverse action you put you put the county in a damned if you do damned if you don't situation if they didn't if they granted on paper easy to I would I would have thought the overwhelming norm is to say you're gonna be on unpaid leave for four months as we sort this out that that's I assume what the EOC is contemplating and that's doesn't have a they don't have a bright line of how long unpaid leave is gonna be well they don't say permanent correct they don't probably have never upheld 99 months so I feel like that's a bit of a problem on your side of the case but I but I think as part of this process she can come back and go you know the unpaid leave I'm not getting better you know that's she's got obligations under the ADA as well to come back and say I my doctor you know those communications say and she says we're gonna be monitoring it so her doctor can come back and say look it's not getting better it's in fact getting worse so this is never gonna work you'd already said that 99 months I saw those communications before the June 1st email I don't see them in the record after the final one can you point me to those I right now I can't point them to me because I don't think I have it with me I mean it says should there be any updates please let us know but like again you know she she has a form from her doctor saying that it's permanent can I ask one other record questions 20 20 to 16 is that what you were referring to the lesson yeah that that's the one I'm where I'm saying they get there they asked her to update her on her medical conditions I'm not sure and if I'm asking outside the record I'm I'm sorry and but I'm just curious like what happened she's on unpaid leave for like all of this time does like just nobody do her job is is there no mulching I don't I don't know the answer to that but I think I don't think this is outside the record too I believe she's actually put in for retirement now so that's I don't know what was happening on a day-to-day I don't live in Washtenaw County so I haven't been to the parks very often but it doesn't seem like they like hired someone to replace her who can I don't correct I don't believe they they have and I don't think there's any replacement in the record so it's not like there it's not it's not like she was let go and we put somebody in there that was not right I thought because there's the discrimination claim too so I was looking for that so it's just gone on filled correct that's my understanding okay there's I think we're thank you thank you and this is what I love about employment like it's learned all kinds of things about all kinds of occupations and we've been talking about the record with a lot of this factual and crew we've been talking about root balls we've been talking about deposition testimony I'd like to actually look at the deposition testimony of Mary Robinson and see what she says what she actually says in her deposition and this is at page ID 444 Mary Robinson is actually talking about root balls and what they would do with root balls they wouldn't try to lift them they would roll them what they would do with trees trees were loaded into the front end of the tractor and Kathy would drive the tractor over and dump it Mary Robinson also talks about in her deposition this is at page ID 445 it's at page 17 of her deposition she talks about the fact that if there was a big chore if there was some large project going on that they would have the ability to either get volunteers or that the county has crews the county would send crews to work with them on these very big jobs so the record itself testified the record itself shows that she and Mary were sort of already working together doing these things together not lifting excessive weights by themselves that as the park horticulturalist she was smart she was intelligent she knew how to do this job she knew the ways to get this job done within her lifting restrictions and she testified in her deposition about how you know this very heavy lifting would be minuscule I also think it is significant that the county on the one hand talks about the job description but on the other hand concedes that the job description is not the end-all be-all it's not the only factor the point was made that the job description itself the 40 pounds wasn't instituted until after she had submitted the request from her doctor until after she'd submitted the accommodation request I would say my example if I was to create the job description for an ideal paralegal I might put able to lift heavy briefcases doesn't mean if I had a paralegal that wasn't able to do that I wouldn't say well let's just wheel the briefcase that's not your essential job function in this case again when it was decided on the briefs when it was decided on summary judgment we had an unfortunate situation I think where the district court opinion the opinion in order conflated the doing outside work weeding mulching planting conflated that with a very specific request for accommodation and a very specific limitation of the no more how does the reasonable accommodation claim here work with the disability discrimination claim that you brought do they essentially just collapse because your discrimination claim is for failure to reasonably accommodate yes I mean essentially the discrimination claim is that it's a slightly different element but right failure to accommodate is you didn't do X Y & Z I think in a way the discrimination claim includes that additional element of you didn't do X Y & Z and then fourth element you had an adverse employment action in other words not only did you not accommodate you but your discrimination claim is just based the failure to accommodate yes because they did not accommodate her and then they put her off work what I would like to point out to the panel is the cases and we discussed this in the briefing the cases that talk about unpaid leave as being in a reasonable accommodation in one of those cases the plaintiff had specifically requested leave and got what he requested in other cases one of the distinguishing factors that was looked at and language talks about if the leave is reasonably likely to allow the person to recover from their medical condition one of the cases dealt with a plaintiff who had postpartum depression the issue was would allowing her additional leave enable her to recover from that postpartum depression that is distinguishable from this case where as has been pointed out it was 99 months it was essentially a permanent medical condition and there was nothing in the record that would suggest that this aortic aneurysm is going to resolve itself or heal and as we pointed out in the brief with the unpaid leave she was placed in the untenable position of either she comes back tells her doctor to lift the restrictions she comes back going against what her doctor had said or she's off work and thank you very much perspective so thanks very much thank you both thank you all very much to both of you for your helpful briefs answering our questions which we always appreciate the case will be submitted and the clerk major in court